FIRST DIVISION

September 19, 2005

No. 1-04-2180

DEBORAH GUINN, 

Plaintiff-Appellant, 

v.

HOSKINS CHEVROLET, UNION FIDELITY LIFE INSURANCE COMPANY, and BANK ONE, N.A., 

Defendants-Appellees. 

)

)

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Allen S. Goldberg, 

Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Deborah Guinn appeals from an order of the circuit court granting defendants Hoskins Chevrolet, Union Fidelity Life Insurance Company (Union), and Bank One, N.A.'s (Bank One) motions to dismiss Guinn's second amended complaint.
(footnote: 1)  On appeal, Deborah contends that the trial court erred in dismissing her second amended complaint because she sufficiently alleged causes of action for violation of the Illinois Consumer Fraud Act (815 ILCS 505/1 
et seq.
 (West 2002)), breach of contract, common law fraud, and unjust enrichment.  For the reasons set forth below, we affirm.

STATEMENT OF FACTS

On October 8, 1996, plaintiffs purchased a used 1991 Ford truck from Hoskins Chevrolet.  Plaintiffs entered into a retail installment contract with Hoskins Chevrolet, which was subsequently assigned to the First National Bank of Chicago, the predecessor of Bank One, now known as JPMorgan Chase Bank, N.A.  The retail installment contract provided for a 36-month loan with an APR of 15% and monthly installment payments of $209.03.  Plaintiffs were to make their monthly payments to First National Bank of Chicago, commencing on November 22, 1996.  Eddie also elected to purchase credit life insurance for $106.10, which was to be provided by Union.

On January 19, 2001, Deborah filed the first of three complaints in this case.  This 18-page, 142 paragraph complaint against defendants, alleged claims for consumer fraud, common law fraud, breach of contract, and unjust enrichment.  The claims were based on four alleged "violations" of either the federal Truth-in-Lending Act (TILA) (15 U.S.C. §16 
et seq
. (1988)), Regulation Z (12 C.F.R. §226.1 
et seq. 
(2002)), and/or the Illinois Motor Vehicle Retail Installment Sales Act (815 ILCS 375/1 
et seq.
 (West 2002)), 
i.e.
: (1) Hoskins Chevrolet misrepresented the APR to plaintiffs and concealed the fact it received a kickback from Bank One (APR misrepresentation); (2) Hoskins Chevrolet misrepresented that the cost of credit life insurance was $106.10 and that that entire amount would be paid to Union, whereas, in fact, Hoskins Chevrolet received a kickback (credit life insurance misrepresentation); (3) defendants charged interest prior to the time plaintiffs received the benefit of or actual use of the loan proceeds (early interest claim); and (4) the late charge provision in the installment agreement was ambiguous because it failed to define "installment" and, since installment was not defined, it was not conspicuously disclosed as required by law.  

Thereafter, Union filed an answer denying an agency relationship between it and Hoskins Chevrolet and denying that the credit life insurance premium was less than $106.10 or that any kickbacks were involved.  On July 7, Bank One filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code)  (730 ILCS 5/2-619 (West 2004)) on the basis that Deborah's consumer fraud claims were barred by the three-year consumer fraud statute of limitations and the one-year TILA statute of limitations.  Bank One further moved for dismissal pursuant to section 2-615 of the Code on the basis that, with respect to all counts, Deborah failed to plead specific facts to support her claims, nor could she ever state viable causes of action against it. 

On October 4, Hoskins Chevrolet filed a motion to dismiss pursuant to sections 2-615 and 2-619.  With respect to section 2-619, Hoskins Chevrolet, too, argued that Deborah's consumer fraud claims were barred by the statutes of limitations.  With respect to its section 2-615 motion, Hoskins Chevrolet argued that Deborah failed to allege damages, the installment contract itself rebutted many of her allegations, Deborah failed to plead sufficient facts, and her claims were otherwise insufficient as a matter of law.   

On October 29, Deborah filed her response to Bank One's motion, maintaining that the consumer fraud claims were not barred by the statutes of limitations because the discovery rule applied.  However, she did not state when she "discovered" her claims.  Deborah further maintained that Bank One was not merely an assignee, but was a party to the contract.  

On May 28, 2002, the trial court entered an order on both motions to dismiss.   As to Bank One's motion, the trial court struck the motion in its entirety because it was improper in Despite striking Bank One's motion, the court 
sua sponte
 struck Deborah's complaint in its entirety as "clearly insufficient."  With respect to the consumer fraud claims, the court found they were "rife with conclusions" and "short on facts."  The same was true with respect to the common law fraud claim.  With respect to the breach of contract claims, the court concluded that there was no cause of action in Illinois based on breach of good faith and fair dealing.  Lastly, the court found that the unjust enrichment claim was insufficient and also barred by the express contract.

On June 25, Deborah filed her first amended complaint consisting of 25 pages and 157 paragraphs.  This complaint was essentially the same as her original complaint.  However, in the first amended complaint, Deborah alleged that she only discovered her claims against defendants in December 2000 when she met with her attorney.  Thereafter, all three defendants filed motions to dismiss, essentially on the grounds set forth with respect to Deborah's original complaint.  Deborah responded to each motion and each defendant thereafter replied.  

On March 24, 2003, the trial court granted defendants' motions to dismiss.   With respect to Hoskins Chevrolet's section 2-615 motion to dismiss, the court concluded, in connection with the APR misrepresentation, that "although this allegation may support" a "claim of violation of CFA," plaintiff failed to alleged facts as to damages.  With respect to plaintiff's breach of contract claim based on the APR misrepresentation, the court found that it was barred by the one-year TILA statute of limitations and, also, that plaintiff failed to plead facts as to discovery.  With respect to the common law fraud claim, the court found that plaintiff failed to allege specific facts showing that her damages, if any, were proximately caused by Hoskins Chevrolet's alleged conduct.  Lastly, with respect to the unjust enrichment claim, the court concluded as before: this theory was not applicable when an express contract governs as one did here.  Accordingly, the trial court granted Hoskins Chevrolet's section 2-615 motion to dismiss.

With respect to Bank One's section 2-615 motion to dismiss and plaintiff's consumer fraud claims, the court found that plaintiff must plead specific facts demonstrating that Bank One, as an assignee, actively and directly participated in the alleged fraud, which plaintiff failed to do.  With respect to breach of contract based on the APR misrepresentation, the court found that Bank One owed no duty to disclose any information to plaintiff since it was an assignee.  With respect to the common law fraud claim, the court found that there were no allegations of actual damages and, further, that plaintiff failed to allege that Bank One proximately caused any damages by failing to disclose the APR.  Specifically, in connection with damages, the court concluded that plaintiff only asserted conclusory allegations.  With respect to the unjust enrichment claim, the court's conclusion was the same as above.  Accordingly, the court granted Bank One's motion to dismiss.  In addition, the court granted Union's section 2-615 motion to dismiss for all the same reasons that it had granted Bank One's motion to dismiss.

With respect to all three defendants' motions to dismiss pursuant to section 2-619, the court found that it could not say as a matter of law that plaintiff knew or should have known prior to consulting with her attorney of her claims against defendants.  Accordingly, the court denied defendants' motions to dismiss pursuant to section 2-619.

Thereafter, a 39-page, 291-paragraph, second amended complaint was filed on behalf of Deborah and Eddie.  Plaintiffs alleged claims based on the same theories as in the first two complaints.  Specifically, in count I, plaintiffs alleged a consumer fraud claim against all three defendants.  Plaintiffs alleged five separate "violations."  First, plaintiffs alleged that Hoskins Chevrolet misrepresented the APR to them and concealed the overcharge from them.  According to plaintiffs, Hoskins Chevrolet's financial manager indicated he had obtained the lowest possible APR for them and misrepresented that 15% was the rate granted by Bank One when, instead, Bank One actually granted a lower rate to Hoskins Chevrolet and Hoskins Chevrolet kept the difference.  However, according to plaintiffs, Hoskins Chevrolet failed to inform them of the "upcharge" fee, or commission it received, 
i.e.
, Hoskins Chevrolet failed to disclose the "kickback" to them.

With respect to the second violation, plaintiffs maintained that defendants, often without identification of which one or ones they are referring to, which is also true for the rest of the counts, indicated that $106.10 was to be paid to others and concealed from plaintiffs that the entire amount would not be paid to others
, i.e.
, they failed to inform plaintiffs that a kickback would be paid to Hoskins Chevrolet.  

With respect to the third violation, plaintiffs alleged that the late payment provision was ambiguous and not clearly and conspicuously disclosed because the agreement failed to define "installment."  In this count, plaintiffs further alleged that Hoskins Chevrolet failed to execute the agreement and failed to give plaintiffs a copy for review prior to the transaction.   With respect to the fourth violation, plaintiffs alleged that the interest rate was misrepresented to them because they were charged interest prior to having actual use of the credit and that defendants concealed this overcharge from them. 

Lastly, plaintiffs alleged that defendants engaged in unfair practices because they overcharged plaintiffs with additional interest by extending the first payment beyond 30 days to 45 days.  In other words, plaintiffs maintained that defendants earned 15 days of extra interest, which they failed to disclose.  Plaintiffs further maintained that the interest for this period was compounded, rather than simple as required by the contract.

In count II, plaintiffs alleged a breach of contract claim against all three defendants.  This count was based on four of the five above violations.  With respect to the APR, plaintiffs alleged that defendants breached the contract by charging a higher APR than was approved by Bank One.  With respect to early interest, plaintiffs maintained that they only contracted to pay finance charges when defendants had advanced the loan and plaintiffs had actual use of it.  According to plaintiffs, because they were charged interest before they had actual use of the loan, defendants breached the installment agreement.  With respect to the credit life insurance, plaintiffs alleged that defendants breached the contract by charging plaintiffs $106.10 when the actual premium was lower.  According to plaintiffs, defendants were contractually obligated to charge plaintiffs only the actual, not an inflated, price.  With respect to extending the first payment date, plaintiffs alleged that they were overcharged because the interest for these 15 days was compounded, not simple as the contract required.
(footnote: 2)
 In count III, plaintiffs alleged a claim for common law fraud against all three defendants.  This count incorporated by reference counts I and II.  The same four violations, alleged by plaintiffs in their breach of contract claim, were the bases for count III.

Count IV was a claim for unjust enrichment, which incorporated by reference count III.  Plaintiffs alleged that defendants engaged in tortious conduct--increasing the APR higher than agreed upon by plaintiffs, overcharging interest because interest began prior to plaintiffs having actual use of the credit, defendants received or gave a kickback, overcharging interest by compounding interest, and overcharging plaintiffs for the credit life insurance.  Lastly, in count V, plaintiffs set forth allegations with respect to maintaining a class action. 

On June 18, Bank One filed a motion to dismiss plaintiffs' second amended complaint pursuant to section 2-615.  Bank One maintained that plaintiffs' second amended complaint violated sections 2-612 and 2-603 because it was not sufficiently definite and did not contain a plain and concise statement of the claims, referred to plaintiff(s) and defendant(s) without identification, and combined numerous causes of action in the same count against numerous defendants; it lacked specificity in that plaintiffs failed to allege facts demonstrating fraud since the allegations were conclusory without factual support, failed to allege how Bank One, as an assignee, could be liable, and alleged only conclusory facts regarding a scheme between Bank One and Hoskins Chevrolet; plaintiffs failed to allege violations of the Motor Vehicle Retail Installment Sales Act that were actionable as consumer fraud claims, there is no private right of action under the Motor Vehicle Retail Installment Sales Act, and plaintiffs failed to allege three violations of the act as determined by a court as required by the Motor Vehicle Retail Installment Sales Act; plaintiffs' late charge claim was insufficient because the language of the contract was virtually identical to that in the Motor Vehicle Retail Installment Sales Act and similar to that in TILA and plaintiffs failed to allege damages; the fact that interest was charged "early" was not improper because plaintiffs agreed to this in the contract and it is proper under TILA; plaintiffs failed to state a cause of action for breach of contract because Bank One had no duty to disclose, it cannot be held liable for Hoskins Chevrolet's conduct where there were no facts to establish that Hoskins Chevrolet was Bank One's agent but merely bare conclusions, and any prior oral agreements merged into the written contract; and plaintiffs could not pursue an unjust enrichment claim because a contract governed--as already determined twice by the trial court.

On June 24, Union filed a motion to dismiss pursuant to sections 2-615 and 2-619.  Under section 2-619, Union maintained that the "filed rate doctrine" precluded plaintiffs' claim and that the consumer fraud claims were barred by the statute of limitations.  With respect to all claims, Union maintained that it owed no duty to disclose to plaintiffs that Hoskins Chevrolet was paid (or retained) a commission.  With respect to section 2-615, Union maintained that plaintiffs failed to plead adequate damages in connection with their consumer fraud and common law fraud claims; failed to state a cause of action against Union under theories of consumer fraud, common law fraud, or breach of contract because (a) the contract contained no misrepresentations since "Hoskins Chevy" was typed on it, (b) Union was not a party to the contract and was, therefore, not a proper defendant, (c) all "bad acts" were committed by Hoskins Chevrolet not Union, (d) Union had no active or direct participation in any alleged fraud, (e) Union had no duty to disclose to plaintiffs that Hoskins Chevrolet would receive a commission because it was not a party to the contract, and (f) Hoskins Chevrolet was entitled to receive a commission--it did not receive a kickback.  With respect to the unjust enrichment claims, Union adopted Bank One's argument.

On July 18, Hoskins Chevrolet filed a motion to dismiss pursuant to sections 2-615 and 2-619.  With respect to section 2-619, Hoskins Chevrolet maintained that plaintiffs' consumer fraud claims were barred by the statutes of limitations and that plaintiffs' breach of contract claims were barred by the doctrine of merger.  Under section 2-615, Hoskins Chevrolet maintained that all of plaintiffs' counts were legally insufficient and violated section 2-603, 
i.e.
, plaintiffs failed to allege sufficient damages--specifically that they could have received a lower APR or premium for credit life insurance, from whom, or the amount, and also, that plaintiffs failed to allege facts that they could have borrowed from any lender who would have postponed interest until Hoskins Chevrolet was actually paid.  With respect to the consumer fraud claims, Hoskins Chevrolet argued that plaintiffs failed to give the statutorily required notice before filing a lawsuit, nor did they allege same, and to the extent these claims were based on the Motor Vehicle Retail Installment Sales Act, there is no private right of action under that act.  With respect to the credit life insurance claim, Hoskins Chevrolet maintained that the contract refuted plaintiffs' claim because it clearly showed that the premium was paid to others and Hoskins Chevy.  Lastly, with respect to the unjust enrichment claim, Hoskins Chevrolet adopted Bank One's argument.

Thereafter, plaintiffs responded to Bank One's motion to dismiss, maintaining that their complaint complied with section 2-603 because each count contained a separate cause of action and complied with section 2-612 because the complaint as a whole sufficiently informed defendants of the nature of the claims against them.  Plaintiffs further maintained that they pled sufficient facts with respect to fraud and agency and that the facts alleged must be accepted as true at this stage of the proceedings.  Lastly, plaintiffs argued that the question of Bank One being an assignee was irrelevant.  Plaintiffs also responded to Union and Hoskins Chevrolet's motions to dismiss.  

On January 23, 2004, the trial court entered an order and memorandum opinion on the motions to dismiss.  With respect to plaintiffs' consumer fraud claims, the court noted that it had dismissed plaintiff's first amended complaint because there were no  allegations that plaintiffs could have received a lower APR and, thus, no allegations of actual damages.  According to the court, this was specifically addressed during oral argument, yet plaintiffs failed to cure the defect.  Accordingly, the court dismissed count I with prejudice.  In addition, the court noted that, with respect to Bank One, plaintiffs failed to allege sufficient facts to demonstrate that Bank One actively and directly participated in any fraud.  Moreover, with respect to Union, the court found that there was no showing that the credit life insurance premium ever could have been less, particularly when Union was not allowed to charge less than the filed rate.  As for plaintiffs' common law fraud claims, the court concluded that these claims suffered from the same defects as the consumer fraud claims, 
i.e.
, plaintiffs failed to allege specific facts to show actual damages or that any alleged damages were proximately caused by defendants' conduct.  The court further found that plaintiffs failed to plead their claim with the specificity required for a common law fraud claim, or allege any facts to support their conclusory allegation that defendants engaged in a scheme.  Accordingly, the court dismissed count III with prejudice.

With respect to plaintiffs' breach of contract claim, the court concluded that the allegations that the alleged breaches were based upon, 
i.e.
, the APR misrepresentation and credit life insurance misrepresentation, were barred by merger and the parol evidence rule  since the alleged misrepresentations occurred prior to the parties entering into the contract.  The court further found that the contract specifically indicated that the premium would be paid to others and Hoskins Chevy.  With respect to the extension of the first payment date, the court found that this was proper under Regulation Z, 
i.e.
, specifically, interest could accrue from the date plaintiffs took possession of the truck because they had actual credit at that time.  Accordingly, the trial court dismissed count II with prejudice.

Lastly, with respect to the unjust enrichment claim, the court again concluded that this theory was not applicable because an express contract controlled.  Accordingly, the trial court dismissed count IV with prejudice.

On February 20, plaintiffs filed a motion to reconsider with respect to the trial court's dismissal of Hoskins Chevrolet only.  According to plaintiffs' motion, they sought reconsideration with respect to only one issue: whether Hoskins Chevrolet overcharged plaintiffs interest by extending the first payment date since the interest was compounded.  Thereafter, Hoskins Chevrolet responded.  On June 3, plaintiffs replied, in which they raised additional issues and challenges.  On June 9, the trial court denied plaintiffs' motion to reconsider, noting that plaintiffs merely reiterated arguments they had previously made and did not address the core problems that led to dismissal of their second amended complaint.  This appeal followed.

ANALYSIS

A motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of the plaintiffs' complaint based on defects apparent on the face of the complaint.  
Vitro v. Mihelcic
, 209 Ill. 2d 76, 81, 806 N.E.2d 632 (2004).  Illinois law requires that a plaintiff present a legally and factually sufficient complaint.  
Kumar v. Bornstein
, 354 Ill. App. 3d 159, 164-65, 820 N.E.2d 1167 (2004).  When reviewing the sufficiency of a complaint, the court must accept as true all well-pleaded facts and all reasonable inferences that can be drawn from those facts.  Vitro, 209 Ill. 2d at 81.  However, we may disregard legal and factual conclusions unsupported by allegations of fact.  
Kumar
, 354 Ill. App. 3d at 165.  It is the court's duty to determine, considering the allegations of the complaint in the light most favorable to the plaintiffs, whether the allegations are sufficient to state a cause of action upon which relief may be granted.  
Borowiec v. Gateway 2000, Inc.
, 209 Ill. 2d 376, 382, 808 N.E.2d 957 (2004).  The complaint should not be dismissed unless it is clearly apparent that the plaintiffs could prove no set of facts that would entitle them to relief.  
Borowiec
, 209 Ill. 2d at 382.  We review the trial court's decision on a motion to dismiss 
de novo
 (
Neade v. Portes
, 
193 Ill. 2d 433, 439, 739 N.E.2d 496 (2000)) and may affirm on any basis or ground for which there is a factual basis in the record regardless of the trial court's reasoning.  
Colmar, Ltd. v. Fremantlemedia North America, Inc.
, 344 Ill. App. 3d 977, 994, 801 N.E.2d 1017 (2003).

Both federal and state law mandate certain disclosures in consumer financing transactions, including automobile financing.  Section 1602 of TILA defines "Material disclosures" as 

"the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness ***."  15 U.S.C.A. §1602(u) (1998).

Section 1638 sets forth the required disclosures by a creditor, in general terms, and notes that the required disclosures must be conspicuously segregated from other terms and made before credit is extended to the consumer.  15 U.S.C.A. §1638(b)(1) (1998).  Specifically, the creditor must disclose:

"(a)(2)(B)(iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person ***;

(3) The 'finance charge', not itemized, using that term.

(4) The finance charge expressed as an 'annual percentage rate', using that term. ***  

***

(10) Any dollar charge or percentage amount which may be imposed by a creditor solely on account of a late payment, other than a deferral or extension charge.' "  15 U.S.C.A. §1638 (1998).

Regulation Z, promulgated by the Federal Reserve Board (Board), the agency charged with implementing regulations to facilitate compliance with TILA, provides more specific details with respect to disclosures.  Section 226.17 provides for general disclosure requirements, including the form of disclosures (12 C.F.R. §226.17(a) (2002)), the time of disclosure, 
i.e.
, "before consummation of the transaction" (12 C.F.R. §226.17(b) (2002)), and the basis of the disclosure and use of estimates (12 C.F.R. §226.17(c) (2002)).  Section 226.18 details the specific content of the disclosure required.  It provides, 
inter alia
, that the creditor must disclose the following information:

"(b) Amount financed. The amount financed, using that term, and a brief description such as the amount of credit provided to you or on your behalf. ***

(c) Itemization of amount financed.

(1) A separate written itemization of the amount financed, including: 

***

(iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons. ***

***

(e) Annual percentage rate. The annual percentage rate, using that term, and a brief description such as the cost of your credit as a yearly rate. ***

***

(g) Payment schedule. The number, amounts, and timing of payments scheduled to repay the obligation.

***

(l) Late payment. Any dollar or percentage charge that may be imposed before maturity due to a late payment, other than a deferral or extension charge."  12 C.F.R. §226.18 (2002).

Section 3 of the Illinois Motor Vehicle Retail Installment Act  sets forth the general requirements for a retail installment contract, including specific point size and notices.  815 ILCS 375/3 (West 2002).  Section 5 sets forth the disclosure requirements, including, 
inter alia
:

"(4) All other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge.

*** (10) The finance charge expressed as an annual percentage rate, using the term 'annual percentage rate'.

(11) The number, amount, and due dates or periods of payments scheduled to repay the indebtedness and the sum of such payments using the term, 'total of payments'.  ***  The due date of the first installment payment may be fixed by a calendar date, by reference to the date of the contract or by reference to the date of delivery or installation of the goods.

(12) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

***
 (16) The date on which the finance charge begins to accrue if different from the date of the transaction."  815 ILCS 375/5 (West 2002).

This provision further specifically provides that "[a] retail installment contract which complies with the federal Truth in Lending Act, amendments thereto, and any regulations issued or which may be issued thereunder, shall be deemed to be in compliance with the provisions of this Section."  815 ILCS 375/5 (West 2002).

I.  Consumer Fraud Claims

To state a cause of action for violation of the Consumer Fraud Act, a plaintiff must allege that: (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff would rely on the deception; (3) the deception occurred during conduct involving trade or commerce; (4) the plaintiff suffered actual damages; and (5) the plaintiff's damages were proximately caused by the defendant's deceptive conduct.  
Sklodowski v. Countrywide Home Loans, Inc.
, ___ Ill. App. 3d ___, ___, 832 N.E.2d 189, 196 (2005).  A plaintiff must plead a consumer fraud claim with " ' "the same specificity that has always been a prerequisite to an action for common law fraud." '  [Citations]."  
Sklodowski
, ___ Ill. App. 3d at ___, 832 N.E.2d at 196.  Specifically, "the complaint must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such allegations requires the dismissal of the complaint."  
Sklodowski
, ___ Ill. App. 3d at ___, 832 N.E.2d at 196.  "[C]ompliance with TILA is a defense to liability under the Illinois Consumer Fraud Act."  
Charles v. First National Bank of Blue Island
, 327 Ill. App. 3d 399, 404, 763 N.E.2d 850 (2002).  See also 
Lanier v. Associates Finance, Inc.
, 114 Ill. 2d 1, 17, 499 N.E.2d 440 (1986); 
Beckett v. H&R Block, Inc.
, 306 Ill. App. 3d 381, 387, 714 N.E.2d 1033 (1999) (disclosures sufficient under TILA were also sufficient under the Consumer Fraud Act).

A. Misrepresentation of APR

Deborah contends that she sufficiently pled a cause of action for consumer fraud on the basis of the APR misrepresentation because defendants' failure to disclose the "kickback" constituted a deceptive act.

The practice challenged by Deborah with respect to the APR is not only a prevalent occurrence in the automobile finance market (E. Kelley, Jr., J. Ropiequet and A. Christakis, 
APR Splits: Still Legal After All These Years
, 56 Consumer Fin. L. Q. Rep. 296, 296 (Summer/Fall 2002)), but of a long-standing duration, 
i.e.
, it "[h]as been an integral part of the indirect auto finance market since at least the 1960's."  (T. Barnett and G. Lewis, 
Are Automobile Financing and Other Credit Transactions that Comply with the Federal Truth-In-Lending Act Subject to Private Rights of Action Under the Tennessee Consumer Protection Act?
, 71 Tenn. L. Rev. 695, 696 (Summer 2004)).  Specifically, automobile dealers "often receive or retain a percentage of their customers' finance charges when they assign their retail installment sales contract to finance companies."  71 Tenn. L. Rev. at 695.  The rate the automobile dealer obtains from a finance company is known as the "buy rate."  71 Tenn. L. Rev. at 696.  The difference between the buy rate and the rate charged the consumer is commonly referred to by various names, including APR splits (E. Kelley, Jr. and A. Christakis, 
APR Splits and 'Extra Points': What's Wrong With Them?
, Practising Law Institute, PLI Order No. B0-00ZV, 1241 PLI/Corp 535, 540 (April 16, 2001)), dealer spreads, reserves, participation or markup (56 Consumer Fin. L. Q. Rep. at 296), rate differential (J. Fastow, 
Developments in Automobile Finance and Leasing Litigation
, Practising Law Institute, PLI Order No. 6403, 1473 PLI/Corp 109, 117) (2005)), or yield spread premium (L. Young, 
Payoff Statement Fees, Yield Spread Premiums, Texas Home Equity and Other State Law Litigation Stories, Plus A Witch's Brew of FDCPA and Class Action Issues
, 54 Consumer Fin. L. Q. Rev. 92, 96 (Spring 2000)).
(footnote: 3)
 Consumers have repeatedly targeted this practice pejoratively, referring to the amount received by the dealer as a "kickback."  56 Consumer Fin. L. Q. Rep. at 296; 71 Tenn. L. Rev. at 695-96.  Specifically, consumers "normally allege that the buy rate is the real interest rate and that the spread is nothing more than a kickback to the dealer for selecting a particular indirect lender."  71 Tenn. L. Rev. at 696.  In other words, consumers allege that the dealers are inflating the "real" APR, but failing to tell the consumer they are doing so.  56 Consumer Fin. L. Q. Rep. at 296.  More specifically, consumers allege that the dealer must separately disclose the dealer participation and the failure to do so constitutes an unfair or deceptive practice or act.  71 Tenn. L. Rev. at 696.  See also 54 Consumer Fin. L. Q. Rev. at 96.  However, consumers generally have not been successful in their claims under theories of consumer fraud, commercial bribery, TILA, or RICO.  56 Consumer Fin. L. Q. Rep. at 297.  Specifically, the Board as well as federal and state courts have found that separate disclosure of the spread is not required under TILA and, thus, there is no deception on the part of dealers for failing to disclose the spread.  71 Tenn. L. Rev. at 695.  

With respect to the Board, in 1977, it considered and specifically decided against requiring such a disclosure.  42 Fed. Reg. 19,124, 19,124 (April 12, 1977).  The Board defined dealer participation as "typically a portion of the interest component of a finance charge which is allocated to a seller of consumer goods either by a creditor which provides direct consumer financing arranged through the seller or by an assignee which purchases a retail installment contract from the seller."  42 Fed. Reg. at 19,124.  More specifically, the Board noted:

"Dealer participation is largely a phenomenon of the financing of automobile purchases, wherein the automobile dealer secures financing for a purchaser from a lending institution in connection with the sale of a car and receives some portion of the finance charge imposed by the lending institution.  In an alternative mode of proceeding, the dealer may finance the purchase of a car for its customer and thereafter assign the credit agreement to a financial institution and receive a portion of the finance charge imposed from that financial institution."  42 Fed. Reg. at 19,124-25.

The Board then noted that it had been asked to determine whether dealer participation must be separately disclosed as a component of the finance charge.  42 Fed. Reg. at 19,124.  Specifically, the proposed regulation would require dealers to disclose the existence, but not the amount, of dealer participation.  42 Fed. Reg. at 19,124.  After public notice and extensive comment, the Board determined to withdraw the proposed regulation and not to require disclosure of the existence of dealer participation.  42 Fed. Reg. at 19,125.  In so doing, the Board specifically found that it believed "in most instances, the portion of the finance charge which represents the dealer's participation is not an amount which the consumer could save by obtaining a direct loan from a lending institution."  42 Fed. Reg. at 19,125.  In addition, the Board believed consumers were generally aware of the fact that dealer-arranged loans carried a somewhat higher interest rate.  42 Fed. Reg. at 19,125.  Lastly, the Board concluded that it did not believe that disclosure "would significantly enhance the consumer's ability to shop for credit."  42 Fed. Reg. at 19,125.  Specifically, "the addition of another disclosure requirement to Regulation Z would result in more complex disclosure statements and could lead to confusion or misunderstanding by consumers."  42 Fed. Reg. at 19,125.

Moreover, the Federal Trade Commission's
(footnote: 4) website advises consumers that the terms of their credit transactions are negotiable and that their dealership may assign their retail installment sales contracts to lending sources at a buy rate that may be less than the rate charged customers.  See 
www.ftc.gov/bcp/conline/pubs/autos/vehfine.htm
.  "This consumer advisory makes it clear that the FTC does not consider the collection of dealer reserve violative of the TILA."  71 Tenn. L. Rev. at 705.  Thus, federal agencies charged with protecting consumers against deceptive and unfair practices do not require disclosure of the existence of dealer participation.  71 Tenn. L. Rev. at 705.

Similarly, Illinois law does not require such disclosure.  Specifically, section 5 of the Motor Vehicle Retail Installment Sales Act provides as follows:

"Notwithstanding any other provision of this Act or any other law of this State, there is no obligation or duty to disclose to an obligor under a retail installment contract: (i) any agreement to sell, assign, or otherwise transfer the contract to a third party for an amount which is equal to, in excess of, or less than the amount financed under the contract; or (ii) that the assignee of the contract or the person who funded it may pay the seller or the person who originated the contract all or a portion of the prepaid finance charges and other fees or a portion of the finance charge to be paid by the buyer over the term of the transaction or any other compensation irrespective of how the compensation is determined."  815 ILCS 375/5 (West 2002).
(footnote: 5)
 The core question here, as alleged by Deborah, is whether defendants engaged in deceptive acts by failing to disclose to plaintiffs the dealer participation, 
i.e.
, that 15% was not the rate Bank One charged Hoskins Chevrolet.  Even without reviewing the cases addressing the issue presented here, none of which are Illinois cases directly on point, it is clear from the above provisions that a failure to disclose the dealer participation does not constitute a violation of TILA or Regulation Z.  Neither Hoskins Chevrolet nor Bank One was required to disclose this information to its customers.  Similarly, pursuant to section 5 of the Motor Vehicle Retail Installment Sales Act, neither Hoskins Chevrolet nor Bank One was required to disclose this information.  Because the disclosure complied with TILA, it was sufficient under the Consumer Fraud Act and, therefore, plaintiffs could prove no set of facts that would entitle them to relief.  See 
Perino v. Mercury Finance Co. of Illinois
, 912 F. Supp. 313, 316 (N.D. Ill. 1995) (finding: (1) that the payment of a portion of the finance charge by a finance company to an automobile dealer was "neither fraudulent nor *** an illegal 'kickback,' " but, rather, the " 'cost of doing business' " as it "resemble[d] a typical commission," and that the disclosure of this amount was not required by TILA; and (2) noting that "[r]epeated allegations of 'secret agreements' and 'kickbacks' [as the plaintiff had alleged in his complaint] do[es] not transform this perfectly legal conduct into actionable fraud").  See also 
Balderos v. City Chevrolet
, 214 F. 3d 849, 853-54 (7th Cir. 2000) (finding that an automobile dealer "is not its customers' agent" particularly in arranging financing because a buyer "knows, or at least has no reason to doubt, that the dealer seeks a profit on the financing as well as on the underlying sale," and stating that even if an agency relationship existed between a dealer and a buyer, "it would mean that the buyer could tell the dealer to shop the retail sales contract among finance companies and to disclose the various offers the dealer obtained to him, and no one dealing with an automobile dealer expects that kind of service").  

Accordingly, we find that the trial court properly dismissed plaintiffs' consumer fraud claim based on the APR misrepresentation against all defendants.

B. Credit Life Insurance

Deborah next contends that she sufficiently pled a cause of action for consumer fraud on the basis of the credit life insurance claim because defendants affirmatively misrepresented the amount paid to others on her behalf, 
i.e.
, to Union.  Specifically, Deborah maintains that defendants' misrepresentation in "Amounts Paid to Others for You" was false and misleading because Hoskins Chevrolet retained a portion of the premium without disclosing that it was doing so.  Deborah argues that this misrepresentation violates TILA and, therefore, violates the Consumer Fraud Act.  According to Deborah, even though "Hoskins Chevy" was typed onto the contract, this was a not a sufficient disclosure to an unsophisticated consumer such as herself because it was ambiguous and confusing.

The practice challenged by Deborah is known as "upcharging." Specifically, an "upcharge" is a markup on a charge to a buyer for a service or product an automobile dealer sells on behalf of a third party.  T. Hudson, M. Benoit and D. Looney, 
Update on Indirect Auto Finance Dealer Compensation Litigation and Other Pertinent Litigation
, 55 Bus. Law. 1281, 1281 n.2 (May 2000); T. Hudson, M. Benoit and D. Looney, 
Indirect Automobile Finance Dealer Compensation Litigation
, 54 Bus. Law. 1301, 1312 (May 1999).   The markup is the difference between the dealer's cost for the service or product and the price paid by the buyer and is typically retained by the dealer.  55 Bus. Law. at 1281 n.2; 54 Bus. Law. at 1312. 

Section 1638 of TILA and section 226.18 of Regulation Z require a creditor to disclose any amounts paid to others on behalf of the consumer and to identify or reference such persons. 15 U.S.C.A. §1638(a)(2)(B)(iii) (1998); 12 C.F.R. §226.18(c)(1)(iii) (2002).   The official comments to Regulation Z address the issue of "upcharge," stating: 

"2.  Charges added to amounts paid to others.  A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization ***, the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others.  For example, the creditor could add to the category 'amount paid to others' language such as '(we may be retaining a portion of this amount).' "  12 C.F.R. Pt. 226, Supp. 1, cmt. 18(c)(1)(iii)-2 (2002).

Section 9.03 of the Motor Vehicle Retail Installment Sales Act provides: 

"Consideration of another thing of value may be paid or retained by the seller *** in connection with any insurance *** purchased pursuant to the retail installment sales contract made or held by the seller *** and all or a portion of the consideration may be included in the amount charged to the obligor, so long as the seller discloses to the obligor that the seller *** may receive something of value in connection with the purchase."  815 ILCS 375/9.03 (West 2002).  

Under TILA and Regulation Z, a dealer need only disclose the fact that it is retaining a portion of the charge; it is not required to disclose the amount it is retaining.  
Gibson v. Bob Watson Chevrolet-Geo, Inc.
, 112 F.3d 283, 286 (7th Cir. 1997); 
Bernhauser v. Glen Ellyn Dodge
, 288 Ill. App. 3d 984, 993, 683 N.E.2d 1194 (1997).

There is no question that an automobile dealer's failure to disclose that it is retaining a portion of a fee being paid to another on behalf of a buyer is a violation of TILA.  In 
Gibson
, considered one of the forerunner cases on the issue, the plaintiff sued an automobile dealer for consumer fraud, alleging that it violated TILA because it misrepresented the "Amounts Paid to Others."  
Gibson
, 112 F.3d at 284.  In the "Amounts Paid to Others on Your Behalf" section of the contract, it stated, "To North American for Extended Warranty $800.00."  
Gibson
, 112 F.3d at 284.  However, the dealer retained a portion of this amount, but did not disclose that fact to the plaintiff.  
Gibson
, 112 F.3d at 284.  The 
Gibson
 court concluded that the dealer did not accurately disclose the amount paid to North American for the warranty, 
i.e.
, it stated $800 was paid to North American, but a lesser amount was actually paid to North American.  
Gibson
, 112 F.3d at 285.  In other words, the court found that the itemization contained a "false representation."  
Gibson
, 112 F.3d at 285.  Accordingly, the 
Gibson
 court found that because the plaintiff stated a claim for violation of TILA as well as consumer fraud, the trial court improperly dismissed the plaintiff's complaint.  
Gibson
, 112 F.3d at 287.  

In 
Bernhauser
, the court adopted the reasoning of 
Gibson
 and concluded that the defendant failed to comply with the disclosure requirements of TILA "by inaccurately stating the charge for an extended-service contract was paid to a third party," where the dealer listed in the contract in "Amounts Paid to Others for You," a certain amount for the extended service contract, but kept a portion as a profit, without disclosing that fact to the plaintiff.  
Bernhauser
, 288 Ill. App. 3d at 994.  In other words, the dealer engaged in a deceptive act because it did not pay the entire charge for the extended-service contract to third parties as it had represented in the contract, but retained a substantial portion of it.  
Bernhauser
, 288 Ill. App. 3d at 994.  The 
Bernhauser
 court found that because the failure to disclose violated TILA, the plaintiffs' complaint for consumer fraud was improperly dismissed by the trial court.  
Bernhauser
, 288 Ill. App. 3d at 995.  See also 
Martin v. Equity One Consumers Discount Co.
, 194 F. Supp. 2d 469, 470-71 (W.D. Va. 2002); 
Jones v. Bill Heard Chevrolet, Inc.
, 212 F.3d 1356, 1458-59 (11th Cir. 2000); 
Parro v. Borgman Ford Sales, Inc.
, No. 1:00-CV-769 (W.D. Mi. October 5, 2001).

We find that the instant case is unlike any of the above cited cases that found a violation of TILA.  In the contract at issue here, the section entitled "Amounts Paid to Others for You" contains the following:

Insurance Companies $__________

Hoskins Chevy   106.10

"Hoskins Chevy" and "$106.10" were typed onto the form contract.  The amount is not directly on the line adjacent to "Insurance Companies," but under it, with the top of the numbers slightly overlapping the line.  Although this disclosure is not as clear as it could be, the fact that "Hoskins Chevy" is typed in should have put plaintiffs on notice to, at least, inquire as to why "Hoskins Chevy" was listed, and if not, put them on notice that Hoskins Chevrolet was to receive a portion of the premium.  In none of the above cases did a similar situation occur.  In all of them, only the third party was identified on the contract.  Although Deborah argues that "Hoskins Chevy" is not a sufficient disclosure because it is not a reference to Hoskins Chevrolet, but rather a type of car, we disagree.  Clearly, "Chevy" is a common shortened form of "Chevrolet" and the reference to "Hoskins Chevy" was a reference to Hoskins Chevrolet.  Moreover, money cannot logically be paid to an inanimate object, 
i.e.
, a Chevy car.

We find the fact that "Hoskins Chevy" was typed onto the contract in the section entitled "Amounts Paid to Others for You" does not constitute a failure to disclose that Hoskins Chevrolet retained a portion of the credit life insurance premium.  See 
Bernhauser
, 288 Ill. App. 3d at 994 (noting that the dealerships failed to list themselves as recipients in the sections entitled "Amounts Paid to Others for You").  In other words, by adding the words "Hoskins Chevy" where they were added, along with the amount of $106.10, which was clearly the premium for the credit life insurance, Hoskins Chevrolet sufficiently disclosed, under TILA, Regulation Z, and the Motor Vehicle Retail Installment Sales Act, that it was retaining a portion of the premium.  As noted above, it need not disclose the amount, only the fact that it was retaining a portion.

Even assuming that a violation occurred here, we would find that Deborah is unable to establish damages and, therefore, her claim on this basis was properly dismissed.  In order to establish damages, plaintiffs must demonstrate that: "(1) they read the TILA disclosure statement; (2) they understood the charges being disclosed; (3) had the disclosure statement been accurate, they would have sought a different warranty or a lower price; and (4) they would have obtained another warranty or a lesser price."  
Nevarez v. O'Connor Chevrolet, Inc.
, 303 F. Supp. 2d 927, 935 (N.D. Ill. 2004).  Here, Deborah cannot meet, at the least, the fourth element.  She has offered no evidence that she could have obtained a lower premium for the credit life insurance and, therefore, she cannot demonstrate actual damages.  See 
Peters v. Jim Lupient Oldsmobile Co.
, 220 F.3d 915, 917 (8th Cir. 2000) (finding that, where the record contained no evidence that the plaintiff could have received a lower premium for credit life and disability insurance from any other insurance provider, he failed to demonstrate actual damages and, therefore, his TILA claim failed); 
Martin
, 194 F. Supp. 2d at 472 (dismissing the plaintiffs' complaint because they failed to seek and establish actual damages); 
Parro
, No. 1:00-CV-769, slip op. at ___ (finding that the defendant was entitled to summary judgment because the plaintiffs could not satisfy the requirements of demonstrating actual damages); 
Gourrier v. Joe Myers Motors, Inc.
, 115 S.W.3d 570, 576 (Tex. App. 2002) (where there was no evidence that the plaintiff read the TILA disclosure or could have obtained a lower charge for a warranty, the trial court properly dismissed his complaint).

Accordingly, we find that the trial court properly dismissed the consumer fraud claim on the basis of the credit life insurance misrepresentation since plaintiffs could prove no set of facts entitling them to relief.

C. Late Payment Provision 

Deborah next contends that the late payment provision of the contract is ambiguous because it fails to define "installment" and, since installment is not defined, it is not clearly and conspicuously disclosed as required, thus violating TILA, Regulation Z, and the Motor Vehicle Retail Installment Sales Act.  According to Deborah, she is not sure whether "installment" means the full monthly payment or whether it refers to a partial payment.  Deborah maintains that similar provisions have been held to violate TILA and Regulation Z in 
Watts v. Key Dodge Sales, Inc.
, 707 F.2d 847 (5th Cir. 1983), 
Whitley v. Southern Discount Co. of Georgia
, 772 F.2d 815 (11th Cir. 1985), and 
Demitropoulos v. Bank One Milwaukee, N.A.
, 915 F. Supp. 1399 (N.D. Ill. 1996), and the same result should be had here.

As stated above, section 1638(a)(10) of TILA provides that a creditor must disclose "[a]ny dollar charge or percentage amount which may be imposed by a creditor solely on account of a late payment."  15 U.S.C.A. §1638(a)(10) (1998).  Section 226.18(l) of Regulation Z is substantially similar.  Sample disclosure forms are contained in Appendix H to Regulation Z.  Form H-10 provides: "
Late Charge
: If a payment is late, you will be charged $10."  12 C.F.R. Pt. 226, App. H (2002).  Form H-11 provides: "
Late Charge
: If a payment is late, you will be charged $5 or 10% of the payment, whichever is less."  12 C.F.R. Pt. 226, App. H (2002).  Section 11 of the Motor Vehicle Retail Installment Sales Act provides: "A retail installment contract may provide for a delinquency and collection charge, on each installment in default for a period of not less than 10 days, in an amount not exceeding 5% of the installment on installments in excess of $200 or $10 on installments of $200 or less."  815 ILCS 375/11 (West 2002).

In the TILA disclosure section of the contract at issue here in a section entitled, "Your payment schedule will be," the "Number of payments" is identified as 36 and the "Amount of Payments" is set as $209.03.  In this same section, the following is set forth: "
Late Charge
: If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less."  Below this section is another section containing the following information:

"Buyer promises to pay to the order of Seller at the offices of: 
     FIRST NATIONAL BANK OF CHICAGO     
 (Assignee) located in 
 CHICAGO  
, Illinois the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 
  15%   
 
per annum from date until maturity in 
 35    
 installments of 
   $209.03   
 each and a final installment of 
   $209.03   
, beginning on 
 NOV 22nd     
, 19
96
 and continuing on the same day of each successive month thereafter until fully paid."  

The contract then states: "DELINQUENCY CHARGE: If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less."

We initially note that the cases relied upon by Deborah in support of her argument that the late payment provision is ambiguous are not controlling.  Although each of the cases found a delinquency provision, similar to the one here, ambiguous and, therefore, violative of TILA, the statutory provision the courts relied upon is no longer a part of TILA or Regulation Z.  Specifically, the 
Watts
 and 
Whitley
 courts relied upon section 226.8(b)(4) of Regulation Z, which provided that a creditor was required to disclose to a buyer " '[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.' [Citation.]"  
Watts
, 707 F.2d at 852; 
Whitley
, 772 F.2d at 816.  The 
Watts
 court concluded that the delinquency provisions were ambiguous because "they fail[ed] to provide for the amount or method of computation of delinquency charges in the likely event of a partial payment by a debtor."  
Watts
, 707 F.2d at 852.  In other words, a consumer could not tell whether "the creditor was entitled to impose a delinquency charge of 5% on the 
full
 amount of the installment, or merely 5% of the unpaid balance."  (Emphasis in original.)  
Watts
, 707 F.2d at 852.  The 
Whitley
 court simply followed 
Watts
.  
Whitley
, 772 F.2d at 817.  In 
Demitropoulos
, a case involving the federal Consumer Leasing Act (15 U.S.C.A. §1601 
et seq. 
(2002)), the court simply adopted the holdings of 
Watts
 and 
Whitley
 in finding that a delinquency provision in an automobile lease was ambiguous and, thus, violated the Consumer Leasing Act and Regulation M.  
Demitropoulos
, 915 F. Supp. at 1412.

These cases are not persuasive for a number of reasons.  First, 
Demitropoulos,
 the only "Illinois" case, did not involve a claim under TILA, Regulation Z, or for consumer fraud.  Moreover, the court failed to quote the relevant provision of Regulation M that was at issue, which denies us the opportunity to compare that provision to those relevant here to determine whether the provisions are the same or similar.  More importantly, however, the language of the section relied upon by 
Watts
 and 
Whitley
, section 226.8(b)(4), is no longer present in Regulation Z, nor is there any provision with similar language.  Additionally, the current section 226.8, which does not contain subparagraph (b)(4), is contained in the disclosure rules concerning open ended credit agreements, not closed ended credit agreements as is at issue here.  Accordingly, the analysis of these cases is irrelevant to the case 
sub judice
.

We find that the late payment provision here is neither ambiguous, nor does it violate TILA, Regulation Z, or the Motor Vehicle Retail Installment Sales Act.  The language used in the late payment provision is clearly a combination of the language used in TILA and Regulation Z with the language used in section 11 of the Motor Vehicle Retail Installment Sales Act.  The first clause, "If any payment is late," mirrors the language used in TILA and Regulation Z, whereas the second clause, "5% of the installment," mirrors the language of section 11.  A review of the contractual language clearly demonstrates that the terms "payment" and "installment" are interchangeable, which is common and logical, and both mean the amount of $209.03.  "Installment" is defined as "[p]artial payment of a debt" (Black's Law Dictionary 717 (5th ed. 1979)), "one of the portions into which a sum of money or a debt is divided for payment at set and usu. regular intervals," "of, or relating to, based on, or involving periodic payments of a fixed sum," and "a payment that is part of a sum owed" (Webster's Third New International Dictionary 1171 (1993)).  Specifically, in the contract in question, in the TILA disclosure, it identifies 36 payments of $209.03.  In the section below this, it also identifies 36 installments of $209.03.  The terms clearly mean the same thing and there is no ambiguity in the meaning of installment--it means the failure to pay $209.03 in its entirety.  In other words, the late payment provision can be read as: "If any $209.03 is 10 days late, the late charge is 5% of $209.03."  Accordingly, Deborah cannot reasonably argue that the meaning of installment is unclear or confusing.  Its meaning is entirely evident from the language of the contract itself.

To the extent Deborah argues, if at all, that the late payment provision fails to disclose the late charge for a partial late payment, we find there is no requirement in any of the relevant statutory provisions that mandates disclosure of same.  The terminology used in TILA, Regulation Z, and the Motor Vehicle Retail Installment Sales Act do not differentiate between an entire payment that is late or only a portion of a payment.  The references are to "late payment" or "each installment in default."  There is nothing in these provisions that intimate a creditor is required to differentiate and disclose the amount of a late payment if only part of an installment is overdue.  This is evident from Forms H-10 and H-11 themselves.  These forms do not set forth alternatives for defaults based on a full or partial default.  They simply provide that if a payment is late, the buyer must pay x.  

Based upon a plain reading of the contract and the relevant statutory terms, we find that the trial court did not err in dismissing plaintiffs' consumer fraud claim on the basis of the late payment provision since the disclosure of the late fee in the contract is in compliance with TILA, Regulation Z, and the Motor Vehicle Retail Installment Sales Act and, therefore, plaintiffs could prove no set of facts entitling them to relief.

D. Early Interest

Deborah next contends that defendants engaged in deceptive acts by charging interest before financing was approved, before the monies were advanced to her, and before she was given actual use of the credit, which violates TILA.  According to Deborah, without citation to authority, defendants are only entitled to interest once plaintiffs received actual use of the money, 
i.e.
, when Hoskins Chevrolet was paid.

Although neither TILA nor Regulation Z specifically address when interest may begin to accrue, Appendix J, entitled "Annual Percentage Rate Computations for Closed-End Transactions," provides that the "Term of the Transaction"

"begins on the date of its consummation, except that if the finance charge or any portion of it is earned beginning on a later date, the term begins on the later date. ***."  12 C.F.R. Pat. 226, App. J, (B)(2) (2002).

"Consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction."  12 C.F.R. §226.2(a)(13) (2002).  With respect to "consummation," the official staff interpretation states: 

"1. State law governs.  When a contractual obligation on the consumer's part is created is a matter to be determined under applicable law; Regulation Z does not make this determination.  A contractual commitment agreement, for example, that under applicable law binds the consumer to the credit terms would be consummation. ***.

2. Credit v. sale. Consummation does not occur when the consumer becomes contractually committed to a sale transaction, unless the consumer also becomes legally obligated to accept a particular credit arrangement. For example, when a consumer pays a nonrefundable deposit to purchase an automobile, a purchase contact may be created, but consummation for purposes of the regulation does not occur unless the consumer also contracts for financing at that time."  12 C.F.R. Pt. 226, Supp. I, cmt. 2(a)(13) (2002).

Section 5 of the Motor Vehicle Retail Installment Sales Act explicitly addresses accrual of interest.  Specifically, a creditor must disclose "[t]he date on which the finance charge begins to accrue if different from the date of the transaction."  815 ILCS 375/5(16) (West 2002).  

We initially note that Deborah presents no authority to support her contention.  Based on the official comments to the federal legislation, it is clear that the intent of the drafters was that the term begins and interest may accrue upon consummation, 
i.e.,
 when a consumer is bound to the credit transaction.  In the instant case, that would be when plaintiffs signed the contract on October 8, 1996.  It is at this time that plaintiffs contracted for financing and became contractually obligated on the credit agreement--they were legally bound to the credit arrangement with Bank One.  Moreover, the state legislature clearly contemplated that interest would begin to accrue at this time as evidenced by the language of subparagraph 16 of section 5 of the Motor Vehicle Retail Installment Sales Act.  Specifically, the "date of the transaction" here was October 8, 1996.  Again, Deborah has offered no authority to the contrary.  Accordingly, we find that the trial court did not err in dismissing plaintiffs' consumer fraud claim on this basis because accrual of interest as of the date of the contract does not violate TILA, Regulation Z, or the Motor Vehicle Retail Installment Sales Act and, therefore, plaintiffs could prove no set of facts entitling them to relief.

E. First Payment Date

Deborah next contends that defendants engaged in deceptive acts by extending the first payment date to November 22 (45 days rather than the normal 30 days) since this afforded them 15 days of extra interest, which they failed to disclose and which resulted in an actual increase in the APR above 15%.

Deborah's contention is belied by the express terms of Regulation Z.  Section 226.17 of Regulation Z provides as follows:

"(c)(4) In making calculations and disclosures, the creditor may disregard any irregularity in the first period that falls within the limits described below and any payment schedule irregularity that results from the irregular first period.

***

(ii) For transactions in which the term is at least 1 year and less than 10 years, a first period not more than 11 days shorter or 21 days longer than a regular period."  12 C.F.R. §226.17(c)(4) (2002).

The official staff interpretations of this provision state:

"1.  Payment schedule irregularities. When one or more payments in a transaction differ from the others because of a long or short first period, 
the variations may be ignored in disclosing
 the payment schedule, finance charge, 
annual percentage rate
, and other terms. For example:

● A 36-month auto loan might be consummated on June 8 with payments due on July 1 and the first of each succeeding month.  
The creditor may base its calculations on a payment schedule that assumes 36 equal intervals and 36 equal installment payments, even though a precise computation would produce slightly different amounts because of the shorter first period.

● By contrast, in the same example, if the first payment were not scheduled until August 1, the irregular first period would exceed the limits in § 226.17(c)(4); the creditor could not use the special rule and could not ignore the extra days in the first period in calculating its disclosures.

2.  Measuring odd periods.  In determining whether a transaction may take advantage of the rule in § 226.17(c)(4), the creditor must measure the variation against a regular period.  For purposes of that rule:

● The first period is the period from the date on which the finance charge begins to be earned to the date of the first payment.

● The term is the period from the date on which the finance charge begins to be earned to the date of the final payment.

● The regular period is the most common interval between payments in the transaction.

In transactions involving regular periods that are monthly, semimonthly or multiples of a month, the length of the irregular and regular periods may be calculated on the basis of either the actual number of days or an assumed 30-day month."  (Emphasis added.) 12 C.F.R. Pt. 226, Supp. 1, cmt. 17(c)(4) (2002).

Paragraph 17(c)(4) of Regulation Z specifically authorizes a dealer to extend the first payment date up to 51 days.  The first period here was from October 8 to November 22, or, 45 days.  Clearly, pursuant to section 17(c)(4), Hoskins Chevrolet was authorized to extend plaintiffs' first payment date to November 22, could ignore the 15 extra days in disclosing the APR, and could base its calculations on an assumed 30-day regular period even though "a precise computation would produce slightly different amounts because of the [longer] first period."  The case here is unlike that given in the second example set forth above where the extension of the first payment date was 53 or 54 days, contrary to the mandates of section 17(c)(4).  Moreover, plaintiffs agreed to the extension by signing the contract.  Because Regulation Z specifically authorized Hoskins Chevrolet to extend plaintiffs' first payment date to November 22, we find that the trial court properly dismissed plaintiffs' consumer fraud claim on this basis since Hoskins Chevrolet's conduct did not violate TILA and, therefore, did not constitute a deceptive act or practice and, therefore, plaintiffs could prove no set of facts entitling them to relief.

In summary, we affirm the trial court's dismissal of count I of plaintiffs' complaint in its entirety since there is no set of facts that plaintiffs could plead that would entitle them to relief.  Based on our resolution of this issue, we need not address the question of whether plaintiffs sufficiently alleged damages.  Further, for the reasons set forth above, we find that the trial court properly dismissed plaintiffs' common law fraud claim alleged in count III of their second amended complaint.

II.  Breach of Contract

Deborah next contends that the trial court erred in dismissing count II of her complaint because she sufficiently stated a cause of action for breach of contract on the four alleged violations, 
i.e.
: with respect to the APR, Deborah maintains that defendants breached the contract by charging a higher rate of interest than that afforded to Hoskins Chevrolet by Bank One; with respect to early interest, Deborah maintains that defendants breached the contract by charging interest before monies were advanced to her; with respect to the credit life insurance claim, Deborah maintains that defendants breached the contract because they were contractually obligated to charge only the actual premium, not an inflated one; and with respect to extension of the first payment date, Deborah maintains that defendants breached the contract because they overcharged interest and compounded it.  In connection with the parol evidence rule, Deborah contends that because defendants made material misrepresentations to her, there was no meeting of the minds and, therefore, no contract.
(footnote: 6)
 In 
Charles v. First National Bank of Blue Island
, 327 Ill. App. 3d 399, 763 N.E.2d 850 (2002), the plaintiff alleged that the defendants misrepresented the APR to them in the retail installment contract because it listed the APR as 15.75%, whereas it was actually 15.81%, thereby violating TILA, the Consumer Fraud Act, and constituting breach of contract.  
Charles
, 327 Ill. App. 3d at 400-01.  Only the breach of contract claim was before the 
Charles
 court on appeal and the court concluded that because the APR disclosure complied with TILA, "plaintiff cannot state a claim for breach of contract based on that disclosure."  
Charles
, 327 Ill. App. 3d at 404.  See also 
Lanier
, 
114 Ill. 2d at 17 (compliance with TILA is a defense to liability under the Consumer Fraud Act).  Accordingly, the 
Charles
 court concluded that the defendants were entitled to summary judgment because, as a matter of law, they did not breach their contract with the plaintiff.  
Charles
, 327 Ill. App. 3d at 405.  

Because each of the alleged violations challenged by plaintiffs here as constituting a breach of contract is in compliance with TILA, pursuant to 
Charles
, plaintiffs cannot state a claim for breach of contract based on them.  Accordingly, we find that the trial court properly dismissed count II of plaintiffs' second amended complaint.

III.  Unjust Enrichment

Deborah next contends that the trial court erred in dismissing her unjust enrichment claim because she may properly plead alternative theories and because it is based on tort, not quasi-contract.  

"The theory of unjust enrichment is an equitable remedy based upon a contract implied in law."  
Nesby v. Country Mutual Insurance Co.
, 346 Ill. App. 3d 564, 566, 805 N.E.2d 241 (2004). "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law."  
Nesby
, 346 Ill. App. 3d at 567.  In other words, "[w]here there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application."  
Nesby
, 346 Ill. App. 3d at 567.  See also 
People ex rel. Hartigan v. E & E Hauling, Inc.
, 153 Ill. 2d 473, 497, 607 N.E.2d 165 (1992).  However, a party may plead claims in the alternative, 
i.e.
, she may plead a claim for breach of contract as well as unjust enrichment.  See 
Doyle v. Holy Cross Hospital
, 186 Ill. 2d 104, 120, 708 N.E.2d 1140 (1999) (Freeman, C.J., concurring in part, dissenting in part).  See also 
Bureau Service Co. v. King
, 308 Ill. App. 3d 835, 841, 721 N.E.2d 159 (1999) (at the pleading stage, parties may plead alternative legal theories even if they are inconsistent).  "Nonetheless, while a plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel."  
The Sharrow Group v. Zausa Development Corp.
, No. 04 C 6379, slip op. at ___ (N.D. Ill. December 6, 2004).

While it is true Deborah is asserting that she was fraudulently induced by defendants, she relies on the contract between herself and Hoskins Chevrolet.  Throughout her complaint, Deborah refers to the retail installment contract and her allegations of defendants' violations are based on information and obligations expressed within that contract.  Although the contract is not specifically referenced in Deborah's unjust enrichment count, she incorporates the allegations of each other count into the unjust enrichment count.  Moreover, Deborah attached to her complaint the retail installment contract.  Accordingly, dismissal of this count is appropriate under the principles set forth above.  See, 
e.g.
, 
The Sharrow Group
, slip op. at ___ (dismissing the plaintiff's unjust enrichment count where it incorporated allegations of a valid and enforceable agreement into that count and also attached a copy of the relevant contracts to the complaint); 
Cooper v. Durham School Services
, No. 03 C 2431, slip op. at ___ (N.D. Ill. September 22, 2003) (dismissing the plaintiff's unjust enrichment claim where the count contained allegations that a contract governed the parties' relationship); 
Team Impressions, Inc. v. Chromas Technologies Canada, Inc.
, No. 02 C 5325, slip op. at ___ (N.D. Ill. February 18, 2003) (dismissing the plaintiff's unjust enrichment claim because it included allegations of a specific contract that governed the parties' relationship, 
i.e.,
 the plaintiff's unjust enrichment claim was based on the defendant's failure to fulfill contractual terms); 
SMC Corp. v. PeopleSoft USA, Inc.
, No. 1:00 CV 01095-LJM-VS, slip op. at ___ (S.D. Ind. October 12, 2004) (dismissing the plaintiff's claim for unjust enrichment where the plaintiff incorporated by reference allegations that a valid contract existed between the parties into the unjust enrichment claim and where the complaint did not allege that the contract was void or otherwise unenforceable).  See also 
AA Sales & Associates, Inc. v. JT & T Products Corp.
, 48 F. Supp. 2d 805, 807-08 (N.D. Ill. 1999) (same).   Accordingly, we find that the trial court properly dismissed the unjust enrichment claim set forth in count IV of plaintiffs' second amended complaint.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON and HALL, JJ., concur.

FOOTNOTES
1:
Although Eddie Guinn, Deborah's former husband, was listed as a plaintiff on the second amended complaint, neither the notice of appeal nor either of the briefs filed on behalf of appellant before this court list him as a plaintiff or appellant.  Moreover, a majority of the allegations in the second amended complaint refer only to "plaintiff" as if there were only one.  However, where relevant, the term plaintiffs will be used and includes both Deborah and Eddie and our resolution applies to the second amended complaint, whether in relation to Deborah or Eddie.

2:
Interestingly, in this respect, plaintiffs requested damages from Union as well as the other two defendants.

3:
We use the term "dealer participation" since the Board utilized that term.

4:
This entity works to eliminate unfair or deceptive market place practices by enforcing consumer protection laws, including TILA.  See 
www.ftc.gov/bcp/conline/pubs/general/guidetoftc.htm.

5:
This provision, which amended section 5, became effective January 1, 1998.

6:
Deborah argues for the first time on appeal that there is no valid contract.  In her complaint, she does not seek rescission of the contract nor a declaration that it is void.  Because this issue is raised for the first time on appeal, we will disregard it.  
Haudrich v. Howmedica, Inc.
, 169 Ill. 2d 525, 536, 662 N.E.2d 1248 (1996).