OPINION OF THE COURT
Alan A. Bergstein, J.
Defendant, Crossland Mortgage Corp., moves for summary judgment dismissing the complaint, pursuant to CPLR 3212.
Plaintiffs seek money damages for breach of contract, and interference with business relations, and requests punitive damages for "gross misconduct”. Plaintiffs also request interest on their escrow fund, which they allege was not refunded promptly.
Plaintiffs, for the purpose of purchasing a residential parcel of property in June 1987, borrowed $250,000 from defendant, securing the repayment of same by a purchase money first mortgage in a like amount. The mortgage recording tax was assumedly paid at the time of recording said mortgage.
Subsequently, on January 8, 1991, the defendant assigned said mortgage to Citibank, N.A. and retained servicing of said loan pursuant to a servicing agreement. The assignment of said mortgage effectuated a full and complete transfer of ownership of said mortgage. Citibank, N.A. became the owner thereof, defendant, Crossland Mortgage Corp., its agent and servicer.
Upon the assignment, Citibank, N.A. became the sole arbiter of all actions relating to said mortgage, including but not limited to the document which its servicer would execute upon full payment thereof.
The plaintiffs elected to refinance said mortgage and requested defendant to execute an assignment of the loan to its new lender. Defendant refused to execute such a document, *522 relying on the guidelines and instructions of its principal, Citibank, N.A.
The instant action followed, seeking reimbursement of the additional mortgage tax which plaintiffs were compelled to pay, punitive damages for alleged gross misconduct and interest on the balance in the tax escrow account which balance was not refunded for 23 days.
Defendant’s motion is granted; the plaintiffs’ complaint is dismissed. °
Prior to 1990, section 275 of the Real Property Law mandated a mortgagee whose loan was being fully paid, to execute an assignment of the note and mortgage, rather than a satisfaction piece, at the request of the mortgagor.
Effective July 1, 1989, the Legislature amended section 275 of the Real Property Law to change the entire thrust of the statute. (L 1989, ch 241, § 87.) The execution of an assignment by a "retiring” mortgagee is now permissive, rather than mandatory.
The plaintiffs cite Goldstein v Soledad Place Corp. (157 Misc 2d 801) as authority buttressing its cause of action. This case is distinguishable from the instant case.
The court elects not to follow Goldstein (supra). The factual situation is markedly different. The court in Goldstein dealt with an assignment requested by a tenant in possession, Bernies Gold Square, Inc., which sought to redeem the premises which it occupied from a foreclosing mortgagee. The court, in an effort to protect the tenant, and assist it in the preservation of its business, made it fiscally convenient for it to redeem by directing the mortgagee to assign its mortgage.
It is worthy to note that without the economic savings effectuated by an assignment, Gold Square indicated that it was unwilling to redeem.
In the instant case, the plaintiffs elected, voluntarily, to refinance their mortgage. There was no threat of losing their home, no foreclosure action, no outside force motivating them to do so.
Collateral to the main issue is defendant’s authority to assign the mortgage, if it wished to do so. The court takes judicial notice of the practice of lending institutions to trade, sell or otherwise deal with packaged mortgage loans, in the same manner as listed securities are traded. In many instances, although title and ownership of the mortgage is transferred, servicing remains in the transferror.
In the instant case, the real party in interest is the owner of *523 the original loan, Citibank, N.A., to which defendant had assigned the same. Plaintiffs’ action seeking to recover its out-of-pocket damages should properly have been brought against Citibank, N.A., as the owner and holder of the loan, rather than defendant, its agent.
Collateral to plaintiffs’ main issue as well is the actual amount of damages which they sustained. The recording tax imposed upon the recording of a mortgage against a one-family frame is one half of 1% on the first $10,000; three quarters of 1% on the balance. (Tax Law § 253.)
At the very best, were plaintiffs successful in their quest for reimbursement of the mortgage recording tax on the refinance of their mortgage, the amount of their damages would be calculated: $50 on the first $10,000; $1,739.25 on the balance, or a total of $1,789.25.
The court has considered plaintiffs’ other contentions, namely their claim of prima facie tort, and a lack of good faith on defendant’s part, and finds the same to be without merit.
Plaintiffs’ claim for punitive damages is likewise dismissed. Punitive damages are not awarded for a private wrong. The general public must be affected (Parkway Windows v River Tower Assocs., 108 AD2d 660, 664 [citing Garrity v Lyle Stuart, Inc., 40 NY2d 354]).
Plaintiffs’ claim that the failure to return the escrow fund, held by the defendant within a reasonable time, seeks to obligate the defendant to pay interest thereon at the statutory rate.
As of July 1, 1974, pursuant to the efforts of the New York State Attorney-General, Laws of 1974 (ch 119) enacted section 5-601 of the General Obligations Law mandating the payment of interest on escrow accounts. Said interest rate was set at 2% per annum, subject however to modification by the New York State Banking Board.
During the entire period that defendant held and later serviced plaintiffs’ loan, interest accrued and was credited to the escrow fund. Further, for as long as said fund was on deposit, prior to its refund after satisfaction of the loan, interest continued to accrue.
*524 The court finds that 23 days was a reasonable period of time within which defendant should have refunded the balance of the escrow account. This is especially so in light of the fact that the fund earned interest until paid out.