ROBERT L. SKLODOWSKI, Indiv. and For a Class of Similarly Situated Persons, Plaintiff-Appellant, v. COUNTRYWIDE HOME LOANS, INC., Defendant-Appellee.

First District (4th Division)   No. 1—04—1809

Opinion filed June 16, 2005.

Clinton A. Krislov and Kenneth T. Goldstein, both of Krislov & Associates, Ltd., of Chicago, for appellant.

Howard L. Teplinsky and Marcia G. Cotler, both of Ottenheimer Teplinsky Rosenbloom, L.L.C., of Buffalo Grove, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff Robert L. Sklodowski brought this lawsuit as a class action against defendant Countrywide Home Loans, Inc., an Illinois corporation (Countrywide), alleging breach of a mortgage note, breach of fiduciary duty, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2000)) (the Consumer Fraud Act). The trial court granted Countrywide's motion to dismiss the breach of fiduciary duty and Consumer Fraud Act counts and, later, granted Countrywide summary judgment on the breach of contract count. Plaintiff now appeals from the dismissals of all three counts, arguing (1) Countrywide breached the mortgage note, which provided that Countrywide "promptly" refund plaintiff's escrow monies by delaying refunds for 14 days; (2) Countrywide's adoption of the 14-day delay policy constituted consumer fraud; and (3) Countrywide breached a fiduciary duty to plaintiff by not paying him interest on his escrow funds during the 14-day period. For the following reasons, we affirm.

In his amended complaint,[1] plaintiff alleged that on November 21, 1995, he entered into a 15-year conventional jumbo home loan for his personal residence with Covenant Mortgage Corporation. The mortgage attached to the complaint indicates that plaintiff entered into the mortgage with Centerbank Mortgage Company on January 18, 1996. This mortgage was written on an eight-page form with most pages labeled "ILLINOIS—Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT." The mortgage required the borrower to pay the lender a sum, referred to as "Funds," for "Escrow Items,"

---

[1]This complaint is entitled "Second Amended Class Action Complaint," but because the record reflects that this was plaintiff's first amended complaint, we will refer to this pleading as the "amended complaint."

such as taxes and insurance, each month. The borrower could waive this requirement in writing. The lender would hold the funds and apply them to pay the escrow items. The funds were also pledged as additional security for all sums secured by the mortgage. The mortgage also specifically provided: "Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender." This loan was later transferred to Countrywide. In the fall of 2000, plaintiff decided to repay his mortgage. On November 15, 2000, he received an "Amended Payoff Demand Statement," which indicated that his escrow account balance was $2,343.50. In that statement, Countrywide advised plaintiff that: "Countrywide automatically processes escrow refunds 14 days after payoff in order to ensure all outstanding funds have cleared." Plaintiff alleged that he received his refund in 20 days because Countrywide sent the check to his former address.

Plaintiff filed this action in March 2001. In his amended complaint, he included a breach of contract count, citing the above-quoted language that Countrywide must "promptly refund" his escrow funds. He alleged that Countrywide breached this provision by holding his escrow funds for 14 days after he repaid the mortgage, which was not a "prompt" refund. He also alleged a breach of fiduciary duty claim, stating that Countrywide held his escrow funds as a fiduciary for the 14-day period and breached its fiduciary duty to pay interest on these funds for those 14 days. In count III, plaintiff alleged that Countrywide violated the Consumer Fraud Act by engaging in an unfair deceptive act or practice by failing to "promptly" return plaintiff's escrow funds and by failing to earn interest on the funds during the 14-day period. Lastly, count IV alleged that Countrywide was unjustly enriched by holding the escrow funds for 14 days after repayment and by not paying plaintiff interest.[2]

Countrywide then filed a motion to dismiss under section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)) (the Code) contending that the amended complaint failed to state a cause of action under any of the four counts. The trial court granted Countrywide's motion to dismiss in part and dismissed counts II (breach of fiduciary duty), III (Consumer Fraud Act violation), and IV

---

[2]Plaintiff makes no argument on appeal concerning the dismissal of count IV for unjust enrichment. Supreme Court Rule 341(e)(7) provides that "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001. Thus, plaintiff has waived appellate review of this count.

(unjust enrichment) with prejudice, but denied the motion as to count I, the breach of contract count.

Plaintiff then filed a motion for class certification and a motion for summary judgment on the breach of contract count. In his motion for summary judgment, plaintiff argued that Countrywide breached its mortgage agreement because its 14-day policy of refunding escrow funds was not "prompt" and contended that Countrywide had no justification for such a long delay. Plaintiff attached the deposition of Lynne Hiskett, vice-president of the payoff and demands department at Countrywide. She testified that Countrywide's policy was to refund escrow funds in 14 days, with certain exceptions. To her knowledge, Countrywide did not purchase mortgages that were not on Freddie Mac or Fannie Mae documents. All escrow refund checks were mailed the fourteenth day after repayment of the loan. She also stated that Countrywide deposited each borrower's escrow funds into a non-interest-bearing account. Plaintiff testified in his deposition that he sold his condominium, which secured the loan at issue in this case, in December 2000. The escrow refund check was mailed to his former address and then forwarded to his new address so he received it after 20 days.

Countrywide then filed a cross-motion for summary judgment, contending that its 14-day refund policy complied with the mortgage contract's requirement to "promptly" refund escrow funds. Countrywide attached the Federal Housing Administration Loan Servicing Guidelines. In section 5—2, entitled "Prepayment-in-Full," subsection G provided, *"Escrow Balance Returned to Mortgagor.* When the mortgage insurance is terminated without payment of a claim for insurance benefits (i.e., payment-in-full), the remaining funds held in escrow for the payment of taxes and hazard insurance shall be released to the mortgagor promptly (i.e., no later than 30 calendar days after the payoff)." Countrywide also attached Fannie Mae's Servicing Guide for Single Family Residential Mortgages, which, in section VI, 105, entitled "Escrow Refunds," provides in relevant part that "The funds in any escrow deposit account should be refunded to the mortgagor within 30 days of the payoff date." The trial court denied plaintiff's motion for summary judgment and granted Countrywide's cross-motion for summary judgment, entering judgment in favor of Countrywide on the breach of contract count. Plaintiff then filed this timely appeal.

We first address plaintiff's argument that the trial court erred in granting summary judgment to Countrywide on his breach of contract count. "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions,

admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002)." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315, 821 N.E.2d 269, 275 (2004). Where the parties file cross-motions for summary judgment, they agree that no material issue of fact exists and that only a question of law is involved. *Legion Insurance Co. v. Empire Fire & Marine Insurance Co.*, 354 Ill. App. 3d 699, 703, 822 N.E.2d 1, 4 (2004). Our standard of review is *de novo. Home Insurance Co.*, 213 Ill. 2d at 315, 821 N.E.2d at 275.

The issue here is one of first impression in this state: as a matter of law, does Countrywide's policy of refunding escrow account balances 14 days after payoff of the loan comply with the mortgage contract's requirement to "promptly refund" these monies upon repayment? We find that based on this Fannie Mae mortgage agreement and the facts of this case, Countrywide's policy does comply with this provision.

In construing a contract, the cardinal rule is to give effect to the intention of the parties, which is discerned from the plain and ordinary meaning of the language used in the contract. *Mountbatten Surety Co. v. Szabo Contracting, Inc.*, 349 Ill. App. 3d 857, 868, 812 N.E.2d 90, 100 (2004). While we recognize that the term "promptly" may have different meanings in different contexts, here, we must interpret this word within the context of the mortgage industry.

■ Based on this principle, we must reject all of the cases cited by plaintiff because none of them concern the use of the word "promptly" in the mortgage industry. In support of his argument that Countrywide did not "promptly refund" plaintiff's escrow funds, plaintiff first cites *Amella v. United States*, 732 F.2d 711 (9th Cir. 1984), which is not applicable for many reasons. First, it is a federal case construing an admiralty statute. The cause of action arose when the plaintiffs attempted to sue the federal government for negligence after their fishing vessel sank while being towed by the United States Coast Guard. *Amella*, 732 F.2d at 712. The court was required to interpret the term "forthwith" in a federal jurisdictional statute determining when a "libelant" must serve a copy of his "libel" on the United States Attorney in this admiralty case. Clearly, this case offers no insight here where we must construe the term "promptly" in Illinois in the context of a mortgage document.

Next, plaintiff relies on *City of New York v. McAllister Brothers, Inc.*, 278 F.2d 708 (2nd Cir. 1960), which is equally unavailing. This case involved an attempt by McAllister to implead the United States in a suit by the City of New York to recover for damages to the

Brooklyn Bridge allegedly caused by McAllister's negligence in towing a floating derrick up the river without lowering the boom sufficiently to clear the bridge. *McAllister Brothers, Inc.*, 278 F.2d at 709. As in *Amella*, the *McAllister Brothers, Inc.* court also interpreted the definition of "forthwith" in the same admiralty statute governing service of process of a libel against the federal government. Again, this case is not precedential, not persuasive, and not applicable here. Additionally, plaintiff's citation to *Dickerman v. Northern Trust Co.*, 176 U.S. 181, 193, 44 L. Ed. 423, 431, 20 S. Ct. 311, 315 (1900), for the definition of "forthwith" is also irrelevant to our interpretation of the word "promptly."

Lastly, plaintiff cites to *Lithflux Mineral & Chemical Works v. W. H. & F. Jordan, Jr.*, 217 Ill. App. 64 (1920). First, this case is not binding on this court and has no precedential value as it was decided prior to 1935. *Basham v. Hunt*, 332 Ill. App. 3d 980, 992 n.3, 773 N.E.2d 1213, 1224 n.3 (2002). This case involved the interpretation of the term "prompt shipment" in a shipping contract entered into in 1918. The conflicting evidence presented at the bench trial concerned the custom in the shipping industry as to what constituted "prompt shipment" and the impact of the "great world war" on the shipping time line. On appellate review, this court reviewed the trial court's decision that "prompt shipment" meant two to three days under the deferential manifest weight of the evidence standard. The appellate court concluded that the conflict in the testimony concerning the meaning of that term was best resolved by the trial court, which judged the credibility of the witnesses. This case is distinguishable from the present case and offers no guidance to this court in interpreting the term "promptly" in a mortgage agreement *de novo*. Therefore, plaintiff offers no support for his position that Countrywide did not "promptly refund" his escrow monies by issuing a check 14 days after repayment of the loan.

Countrywide, on the other hand, provides us with several relevant authorities in support of its position that its 14-day refund policy fully complies with the mortgage provision at issue here. It is undisputed that this mortgage was written on standard forms promulgated by Fannie Mae, a mortgage company which buys mortgages. Countrywide attached Fannie Mae's Servicing Guide for Single Family Residential Mortgages to its motion for summary judgment. Section VI, 105, of that guide, entitled "Escrow Refunds," provides in relevant part: "The funds in any escrow deposit account should be refunded to the mortgagor within 30 days of the payoff date." These guidelines interpret Fannie Mae's mortgage documents and advise the lenders, including Countrywide, to return escrow funds within 30 days. These

guidelines concern the exact issue in this case, when a lender must promptly refund escrow monies, and interpret the same mortgage contract at issue here. Therefore, although these guidelines are not binding on this court, we find them particularly instructive in our interpretation of a term in a Fannie Mae mortgage contract. Additionally, plaintiff has not challenged these guidelines or presented any persuasive argument for why this court should not use the Fannie Mae guidelines to interpret a Fannie Mae mortgage contract. Under the Fannie Mae Servicing Guide, then, Countrywide's policy of refunding escrow funds 14 days after repayment of the loan fully complies with the mortgage's provision requiring Countrywide to "promptly refund" these monies.

Additionally, Countrywide cites several other authorities in support of its position. First, several states have enacted statutes providing that a lender holding a residential mortgage shall return any remaining monies in an escrow account within 30 days after the mortgage is fully paid. See, *e.g.*, 21 Pa. Cons. Stat. § 705 (2002); R.I. Gen. Laws § 34—26—2 (2002). See also Minn. Stat. § 47.20, subd. 9 (2002) (providing that a mortgagee must refund any remaining escrow funds within 60 days after receipt of the mortgagor's written notice of election to discontinue the escrow account). Further, several courts have addressed this issue and found a period of 20 and 23 days to refund escrow funds to be acceptable. See *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 620 (Pa. 1999) (construing a mortgage provision requiring the lender to "promptly refund" any escrow account balance at payoff in light of Pennsylvania's statute mandating a refund within 30 days and holding that the lender's practice of refunding escrow accounts 20 days after payoff complied with the mortgage provision requiring a "prompt" refund); *Harris v. Crossland Mortgage Corp.*, 160 Misc. 2d 520, ___, 610 N.Y.S.2d 423, 425-26 (1994) (finding 23 days a "reasonable period of time" for the lender to refund the plaintiff's escrow account balance). These statutes and cases lend further support to our holding that Countrywide's 14-day refund policy complied with the relevant mortgage provision in this case.

Plaintiff spends much of his brief relating facts and allegations that Countrywide could potentially process its escrow refunds in less than 14 days. He argues that Countrywide has provided "no good reason" for its "delay" in refunding the monies. However, all of this evidence and argument is irrelevant in this case. As discussed above, based on Fannie Mae's Servicing Guide and other authorities, Countrywide's policy of refunding these monies 14 days after payoff is "prompt" within the meaning of this contract. The fact that Countrywide could refund the amounts more quickly is, thus, immaterial.

Therefore, based on this mortgage contract and the specific facts of this case, Countrywide did not breach its contract with plaintiff by following its 14-day policy to refund plaintiff's escrow account balance. Accordingly, the trial court correctly denied plaintiff's motion for summary judgment and granted judgment in favor of Countrywide on this count.

Next, we address plaintiff's claim that the trial court erred in granting Countrywide's motion to dismiss count III of his complaint for a violation of section 2 of the Consumer Fraud Act. Illinois is a fact-pleading jurisdiction. *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 696, 820 N.E.2d 1094, 1105 (2004). A plaintiff must allege facts sufficient to bring his claim within the realm of the cause of action asserted. *Beahringer v. Page*, 204 Ill. 2d 363, 369, 789 N.E.2d 1216, 1221 (2003). A motion under section 2—615 of the Code admits all well-pled facts as true and disregards legal and factual conclusions that are unsupported by factual allegations. *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 182, 790 N.E.2d 925, 929 (2003). When examining a section 2—615 dismissal, the reviewing court must determine whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Canel v. Topinka*, 212 Ill. 2d 311, 317, 818 N.E.2d 311, 317 (2004). Our standard of review is *de novo*. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364, 821 N.E.2d 1099, 1109 (2004).

■ To adequately plead a private cause of action for a violation of section 2 of the Consumer Fraud Act, a plaintiff must allege (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) such damages were proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002). An action under the Consumer Fraud Act " 'must be pleaded with the same specificity that has always been a prerequisite to an action for common law fraud.' " *Paul H. Schwendener, Inc. v. Larrabee Commons Partners*, 338 Ill. App. 3d 19, 30, 787 N.E.2d 192, 201 (2003), quoting *Spengler v. V&R Marathon, Inc.*, 162 Ill. App. 3d 715, 717-18, 516 N.E.2d 787, 789 (1987). Additionally, the complaint must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such allegations requires the dismissal of the complaint. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 419, 775 N.E.2d 951, 961 (2002).

In his Consumer Fraud Act count, plaintiff pled that "Countrywide engaged in an unfair deceptive act or practice by failing to promptly

return Plaintiff's remaining funds after the payment of Plaintiff's debt." He alleged that Countrywide's practice of not promptly returning these funds "deprives its customers of the use, value, and interest on the escrow refunds while the account is held during the float period," resulting in damages. Plaintiff's breach of contract count contains the same allegations. In that count, plaintiff alleged that Countrywide breached the mortgage's provision to "promptly refund" the escrow monies "by not refunding promptly any funds held" and by "wrongly" holding such funds for 14 days. Such a breach "resulted in Plaintiff not having the use of his money during this float period, and he did not earn interest on the money during this lag time."

■ Here, what plaintiff calls "consumer fraud" or an "unfair deceptive act" is simply an allegation that Countrywide failed to fulfill its contractual obligations. *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312, 724 N.E.2d 988, 992 (2000). This is merely a breach of contract count clothed as a violation of the Consumer Fraud Act. It is well settled that "the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Zankle*, 311 Ill. App. 3d at 312, 724 N.E.2d at 992-93. In this case, both his breach of contract and Consumer Fraud Act counts rely on the same facts—that Countrywide failed to refund plaintiff's escrow funds "promptly" as provided for in the mortgage and, thus, deprived plaintiff of his money and interest during the 14-day "float" period. Such allegations do not rise to the level of consumer fraud. We agree with the *Zankle* court that a " 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it." *Zankle*, 311 Ill. App. 3d at 312, 724 N.E.2d at 993. Accordingly, because a "naked breach-of-contract claim does not support a Consumer Fraud Act claim" (*Zankle*, 311 Ill. App. 3d at 313, 724 N.E.2d at 993), plaintiff's allegations fail to state a claim upon which relief may be granted.

Plaintiff also alleged in his Consumer Fraud Act count that Countrywide "engaged in an unfair deceptive act or practice by failing to earn interest on Plaintiff's remaining funds after Plaintiffs' [*sic*] payment of debt." This allegation also fails to state a claim for a violation of the Consumer Fraud Act. First, Countrywide's practice of not paying interest on escrow funds is not "deceptive" because the mortgage agreement clearly discloses this policy. Under the section entitled "Funds for Taxes and Insurance," it provided: "Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds." Plaintiff did not plead that he had a separate agree-

ment with Countrywide to pay interest on these funds nor did he cite an Illinois statute requiring lenders to pay interest. Accordingly, plaintiff did not sufficiently plead that this practice was deceptive. See *Robinson*, 201 Ill. 2d at 420, 775 N.E.2d at 962 (agreeing with the appellate court that because certain penalty provisions were clearly set out in the lease, the plaintiffs did not allege sufficient facts to establish that the defendant's conduct in imposing these penalties was deceptive).

Plaintiff also attempts to allege that this practice was "unfair." A plaintiff may allege that conduct is unfair under the Consumer Fraud Act without alleging that it is deceptive. *Mosiman v. BMW Financial Services NA, Inc.*, 321 Ill. App. 3d 386, 390, 748 N.E.2d 313, 317 (2001). To properly allege that a practice is unfair, a plaintiff must plead that the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Robinson*, 201 Ill. 2d at 417-18, 775 N.E.2d at 961. A plaintiff need not plead and prove all three criteria to support a finding of unfairness. " 'A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.' " *Robinson*, 201 Ill. 2d at 418, 775 N.E.2d at 961, quoting *Cheshire Mortgage Services, Inc. v. Montes*, 223 Conn. 80, 106, 612 A.2d 1130, 1143-44 (1992).

Here, plaintiff did not plead any facts to support any of these three criteria that Countrywide's practice of not paying customers interest on their escrow funds was unfair. Aside from his mere conclusory statement that Countrywide "engaged in an unfair deceptive act or practice" by failing to pay interest on these funds, plaintiff makes no attempt to allege these three elements. Accordingly, neither of plaintiff's allegations sufficiently states a claim for a violation of the Consumer Fraud Act and the trial court properly dismissed this count.

■ Lastly, we must address the trial court's dismissal of count II of the amended complaint for breach of a fiduciary duty. In order to state a claim for breach of fiduciary duty, a plaintiff must allege that (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) such breach proximately caused the injury of which the plaintiff complains. *Johnson*, 354 Ill. App. 3d at 698, 820 N.E.2d at 1106.

In this case, we need not decide whether plaintiff has sufficiently pled the existence of a fiduciary relationship between him and Countrywide. Assuming *arguendo* that such a fiduciary relationship exists here, plaintiff has failed to sufficiently allege a breach of any alleged fiduciary duty. He claims that Countrywide "owed a duty to earn and pay interest on funds remaining after the payment of debts to Plaintiff for funds it held in trust" and seems to allege that

Countrywide breached this duty by not paying him interest on his escrow funds during the 14-day period after he repaid his loan and before Countrywide returned his money. However, as discussed above, the mortgage agreement specifically provided that Countrywide "shall not be required to pay Borrower any interest or earnings on the [escrow] Funds." Plaintiff has not set forth any allegations in his complaint as to how, despite this provision in the signed mortgage contract, Countrywide had a fiduciary duty to pay him interest on these funds and breached that duty. Accordingly, plaintiff's breach of fiduciary duty count fails and the trial court properly granted Countrywide's motion to dismiss this count.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

REID, P.J., and GREIMAN, J., concur.